Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties through the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. On 17 January 1995, an employment relationship existed between plaintiff-employee and defendant-employer.
3. The employer is self-insured with Key Risk Management Services as the servicing agent.
4. Plaintiffs claim is for depression, which he alleges is caused by his employment.
5. Plaintiffs average weekly wage at the time of his alleged injury was $867.54, pursuant to a Form 22 Statement of Days Worked and Earnings of Injured Employee submitted by defendant.
6. Plaintiff is seeking compensation for temporary total disability from 17 January 1995 until 30 June 1995 and medical treatment.
7. Plaintiff currently works for defendant. Plaintiff returned to work for defendant on 30 June 1995 at his previous wage.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was a thirty-seven year old male on the date of the hearing before the Deputy Commissioner. He completed three years of college and has an associate degree in Business Administration from Johnston Community College.
2. Plaintiff worked as a probation and parole officer from 1980 until 10 February 1982. He began Highway Patrol school on 13 February 1992 and graduated in July 1992. Plaintiff was sworn in as a Highway Patrolman on 30 July 1992. Plaintiff worked as a trooper and was stationed in Gastonia until September 1993 when he was promoted to line sergeant.
3. The promotion of a patrol officer usually involves a transfer of duty station. Plaintiff knew that transfers were likely, and he signed a statement of his willingness to relocate when he joined the Highway Patrol. Upon plaintiffs promotion in September 1993, he was transferred from Gastonia to Ahoskie.
4. Plaintiffs wife and children did not relocate to Ahoskie with him. The transfer to Ahoskie put an additional strain on plaintiffs marriage, and the couple legally separated at that time.
5. In Ahoskie, plaintiffs superior officer and supervisor was First Sergeant Johnny Robinson. Plaintiff and Sgt. Robinson did not get along well and had difficulty from the beginning. As line sergeant, plaintiff supervised other troopers. Plaintiff expected Sgt.Robinson to offer him guidance in his new responsibilities, but Sgt. Robinson did not seem interested in offering guidance or being plaintiffs mentor. Plaintiff felt that Sgt.Robinson ignored him, while being friendly with other officers. The relationship between the two men was never cordial.
6. Specific actions taken by plaintiff only exacerbated the difficulties he was having with Sgt. Robinson. Without Sgt. Robinsons knowledge or permission, plaintiff opened a locked drawer in Sgt. Robinsons office. Plaintiff removed and photocopied the Sergeants personnel notes regarding men whom he supervised, including plaintiff. When Sgt. Robinson learned of plaintiffs activities, he reported it to internal affairs. The matter was investigated and plaintiff was issued a reprimand.
7. Another incident occurred in June 1994, as a result of plaintiffs involvement in a high speed pursuit of a motorcycle. When the cyclist made a U-turn, plaintiff blocked the cyclists path with his patrol car. The motorcycle collided with plaintiffs patrol car. The patrol car was damaged in the collision. Plaintiffs actions were a violation of Highway Patrol policy, and Sgt. Robinson insisted that the violation be noted on the report of this incident.
8. During the time that plaintiff was in Ahoskie, his wife was diagnosed with cervical cancer. Plaintiffs son was having problems in school and was subsequently diagnosed with attention deficit disorder. Typically an officer stays at a duty station for two years. However, after only two months in Ahoskie, plaintiff requested a hardship transfer. Although that request was not approved, plaintiff was eventually transferred to Salisbury in mid-September 1994.
9. Plaintiff was under the supervision of First Sgt. Jack Edwards in Salisbury. Sgt.Edwards received plaintiff with a positive attitude and helped him get settled at his new station.
10. At the time plaintiff moved to Salisbury, plaintiff and his wife were still having marital problems. After plaintiff had been in Salisbury about three weeks, his wife and his girlfriend both came to see him on the same day at the motel where he was staying. An altercation took place, and a vehicle was damaged.
11. Sgt. Edwards had no problems with plaintiff and did not observe any indication of stress or anxiety in plaintiff until after the altercation at the motel. After this episode, Sgt.Edwards observed a change in plaintiffs attitude and signs of stress such as weight loss.
12. Plaintiff was charged with conduct unbecoming an officer. Internal affairs investigated the matter and no disciplinary action was taken against plaintiff. The Highway Patrol was concerned that this incident would adversely affect plaintiffs performance as a supervisor of other troopers. Plaintiff was again transferred, this time to Hendersonville.
13. The Hendersonville office did not have a vacancy for a line sergeant. Plaintiff was not assigned to any supervision of troopers, but he was given some administrative duties, such as reviewing reports. Plaintiff was also assigned to do line patrol, a task usually assigned to troopers.
14. Plaintiffs domestic problems were compromising his ability to be an effective supervisor in the Highway Patrol. Sgt. Clyde Amos, plaintiffs supervisor in Hendersonville, did not have confidence in plaintiff s ability to act as a supervisor and did not encourage him in that direction. Sgt. Amos had repeated conversations with plaintiff about whether he should be a supervisor.
15. In January 1995, plaintiff accepted a demotion to return to Gastonia as a trooper. Plaintiff reported to work in Gastonia, where his family was still located. Plaintiff was received and treated well by Captain Goodson and Sergeant James. Plaintiff was assigned to ride with Sgt. James.
16. Shortly after plaintiff returned to Gastonia in January 1995, plaintiff was involved in another confrontation with his wife at their home. Plaintiffs son called the Gastonia police, and two police cars responded to the call.
17. That same evening after the confrontation with his wife, plaintiff was involved in the pursuit of a vehicle on highway 64 west of Gastonia. The vehicle did a U-turn and went down an embankment. Plaintiff attempted to cross the highway median, but his patrol car became stuck in the median. As a result of the pursuit, plaintiffs patrol car was damaged.
18. Following the confrontation with his wife and the pursuit in which his patrol car was damaged, plaintiff was called into the office of his Lieutenant and was told that he was not emotionally fit to work and that he needed to take some time off from work.
19. On 16 January 1995, plaintiff sought treatment from his family physician, Lee D. Barro, M.D. Plaintiff complained of trouble sleeping, loss of appetite coupled with a twenty-pound weight loss, and crying spells. Dr. Barro assessed plaintiff with depression and acute situational stress and referred him to Jey Pillai, M.D., a psychiatrist. Dr. Pillai then referred plaintiff for follow-up with Joseph Lefcoski, M.A., a licensed psychologist.
20. Plaintiff continued under the care of Dr. Pillai and Mr. Lefcoski. They determined that plaintiff was suffering from major depression due to situational factors. At his first session with Mr. Lefcoski, plaintiff reported chaotic and stressful situations with his family and at work. Plaintiff also reported a troubled marriage of twelve years with several verbal incidents with his wife. Mr.Lefcoski is of the opinion that plaintiffs family conflicts and work problems contributed to the development of his depression.
21. Plaintiff was kept out of work due to his depression until early August 1995. He made good progress in his therapy and with the medication. By 13 July 1995, Mr.Lefcoski was of the opinion that plaintiff could return to work with the Highway Patrol.
22. Plaintiff was also referred for assessment to Dan Chartier, Ph.D., a licensed psychologist. He first saw plaintiff on 15 March 1995 and treated him through July 1995. Dr. Chartier assessed plaintiff with major depression related to situational factors.
23. Plaintiff was unhappy about his transfer to Ahoskie and had problems with his supervisor there. The stressors that plaintiff experienced because of his employment with defendant were not the type of stressors which are particularly associated with law enforcement. Rather, the stressors in plaintiffs employment can be fairly said to be characteristic of occupations in general from time to time.
24. Although plaintiff had some difficulties in his work environment, especially when he was in Ahoskie, these problems were largely precipitated by plaintiffs marital and family problems which carried over into his work environment.
25. Dr. Chartier and Mr. Lefcoski have different opinions as to whether plaintiffs job as a highway patrolman placed him at an increased risk of developing depression when compared to the general public. The Full Commission finds that plaintiffs employment with defendant did not place him at an increased risk of developing depression as compared to the general public not so employed.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
Plaintiff has not proven by the greater weight of the evidence that his depression developed due to causes and conditions which are characteristic of and peculiar to his employment with defendant, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment. G.S. 97-53(13); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979). Specifically, plaintiff has failed to prove that his employment placed him at an increased risk of developing depression as compared to members of the general public not so employed. Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
***********
Based upon the foregoing stipulations, findings of fact, and conclusion of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim is hereby DENIED.
2. Defendant shall pay the costs, including the expert witness fees previously assessed.
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER